Good morning. You can be seated. First case, Your Honor, number 212 on the ballot, Charles Dana, plaintiff at home, v. Top Die Casting Co., defendant at home. Arguing in court at home, this is C.S.P. Wynn. Arguing in the street at home, this is Amy Silva. Silva. Thank you, Mr. Wynn. Good morning, Your Honor. Good morning. Good morning, on behalf of Mr. Dana. Your Honor, this is a case of nonpayment of commission after termination of an employee. The statute requires this payment. The reason given to the employee upon termination was that they had a policy that they did not pay commissions after termination. However, there is no written contract between this employee and Top Die Casting. This was not related to the employee during his time of employment and was only made apparent to him at the time of his termination. If there's no written contract or no oral agreement with respect to this, how do they proceed? How is one supposed to proceed? Your Honor, in this case, if there is nothing written, then they are to proceed that, in fact, the commissions, if they are shown to be earned, are to pay him after termination for those earned commissions. Was he the procuring cause? That is the question of debate as to what the procuring cause was. He, according to this policy, was given an account, procured orders and sales from a client. Back up one second. As I understand the record, the trial court applied the procuring cause common law rule, correct? Correct. You're not disputing that was an error or are you disputing that? I'm not disputing that they applied it. I'm disputing how they applied it and the fact of what Mr. Dana did to procure his sales and earn his commissions. So are you alleging that there was some type of an agreement that would override the procuring cause rule? I believe there was a policy within the company that said no matter how long this client has been with the company, if you obtain sales from this client, you will be paid a commission. So in other words, there was a policy that overrode the procuring cause agreement. Yes. Otherwise, you'd be stuck with the procuring cause agreement. Correct. Well, how long would they continue to pay? They would pay from the date of the first shipment of that part for the next 18 months on that part, as many orders as were made on that part. Every month he was given a sales commission report, which listed the part number, when that commission started and when it would end on that part. And so for the next 18 months, he knew if he got orders on that part, he would continue to be paid a commission for that part. Well, what about the company's position that they were doing this as some sort of an incentive? As I understand, their argument is there was no specific agreement to pay him commissions with this company. Is it Stanadyne, how do you pronounce it? It's Stanadyne. That they did this because they wanted to give him an incentive to do this. So how do you respond to that? First off, that was never made aware to my client that this would be some incentive. This would be handled differently than any of his other clients. Regardless of what was in your client's mind, the testimony of the uncontroverted testimony was that he was pretty much a lousy employee or not really bringing in new clients. And it was an incentive. This was the type of business, though, that would only bring in— That was the testimony. You don't contest that. I'm not contesting that was the testimony. That was never related to him during his time of employment. This became kind of a building factor. They first stated, we don't pay after termination. Then they said, well, you want the procuring cause, and then we have performance issues. And, oh, by the way, this was a gift to motivate him. This kind of was this building cause as the litigation went on. Whether he was the procuring cause is a question of fact. Do you agree? I would agree. And so the standard of review is manifest, would you? Yes. And the testimony was that he really had nothing to do with obtaining the client or the customer, Stanadyne. He was just given that. He was given that account to handle. And I think then the factual argument there is that Mr. Dana testified that he obtained more parts and more part orders. Well, isn't it also the testimony that Stanadyne needed additional parts? They needed numbers on parts. These parts are manufactured by the company and then sold, correct? And they have certain molds, and if there's a change on the inside, then they'll give it a new number. And that's just something that happens with all the accounts, correct? Correct. Okay. Yes. And that is one of the areas, too, is that Mr. Dana then worked with that client to get those new parts, and if there was to be a change, he as the salesman would work through that and, again, was given credit and was paid commissions on a monthly basis with these reports showing that he had obtained this part and earned the commission. Let me just segue into another part. I understand your argument, and it has some intuitive appeal. You're saying, look, there were some commissions paid. The company is now backpedaling. They're trying to throw up all of these excuses and hope some of them stick, right? Yes. I understand what you're arguing. But then, really, to cut to the chase, the bottom line is even though there's some indications in the record that during your client's tenure on the account, some parts were shipped, what can you point us to? Does your client ever identify those specific orders and what efforts he expended in procuring those items? Can you identify specifically what he did in bringing about those orders? This was some of the dispute, and, in fact, some of his records when he was terminated were turned over to the company, and from April of 2006 there are no more meeting notes available or turned over to us from the date he took over this account until he was terminated. And those we've been trying to procure, if you use that term, but trying to obtain from the defendant, they were not turned over. Those would have shown what he did. He testified, though, that he made extra trips, made extra efforts, and met with people from Standard & Dime to obtain those original. Ultimately they showed that, though, right? Correct. And I believe through this case we have shown that I believe that with his final order, and you can show throughout 2007, these earned commissions went up substantially from a few hundred dollars to a few thousand dollars based on this client in particular. And, in fact, Mr. Lindmark, when he was all of a sudden given the commissions after termination, Mr. Dana earned almost $50,000 on commissions for parts that were already in the process and commissions that were already in that 18-month process. And he was all of a sudden given those by the defendant, which clearly shows that, in fact, this defendant intended to pay those commissions. They just decided not to pay them to Mr. Dana. They terminate him and give those to Mr. Lindmark. How do you respond and how should the court respond to the fact that this agreement that you submit, there's some sort of agreement with the company as to how commissions are paid, does not address what happens upon termination? Well, I think that's where the case law goes. If you don't have it in writing, if you don't have a contract that cuts off these commissions, it gets paid. And I think clearly it shows to Mr. Dana when he picked up this commission report, he knew until May of 2009 he would be earning commissions on that part. Eighteen months thereafter. That 18 months. And the latest one, according to that last commission report he received, was May of 2009. He would have received a commission based on that part order. So regardless of termination, regardless of the basis of termination, it's your position that 18 months thereafter he should have received those commissions? Yes, that is correct. And that's not through, as a result of a procuring clause rule, but as a result of the contract or the agreement? I believe it is the agreement, yes. And, you know, in this case... So we don't look at the procuring clause rule if there's a contract? What's the contract? The contract, I believe, was, again, an oral contract that we're going to pay you commission, here it is, 2%, and every month they ratified that by giving him a commission report with a check that verified, here's what you earned, here's what you did. And, in fact, the sales manager at the time said when I handed the commission report, he had done everything necessary to earn the commission. And, therefore, that's why in our complaint we have argued both ways because, obviously, the Illinois Waging Act requires it, but also I think the contract would override it. I think the procuring clause rule cases state if there's a contract that says, we're going to cut you off after termination or you don't get paid after this, if there's specific wording in there, then, obviously, the contract would end up taking over. I think in this case he was given these commission reports that showed what he had earned and what he would be earning. You don't cite any cases to support that argument in your brief? I do not. I could not find something specifically to that effect. And that's why the trial court found no existing contract and looked at the procuring clause rule. In the cases that you cited in your brief, sole sales and I believe human, the salespersons in those cases were directly responsible for procuring the customers in the first instance, and that's not the fact here, correct? Correct. And, in fact, throughout the testimony, though, Topguy would admit their policy is we would hand the accounts over, and it didn't matter if the client had been with us for 20 years. So, again, we're talking about the common law, not what the defendant in this case did. What does the law say and how these different sets of facts have been interpreted? In those cases, the salesperson was the person who procured the customer in the first place, not somebody who just handed off an account to another salesperson, which is the case here. I can't cite, I believe that the cases that we had cited that would be the case, I believe there's also some, though, with these ongoing, that there was ongoing sales, and I believe that, yeah, the one difference we would have in our case is that, while I initially didn't bring in stand-to-dine, the policy was you still earned your commission based on those parts. So you're basically asking us to extend the procuring clause rule to cover this situation? Or are you asking us to say that the trial court was in error, and we should review the facts and determine whether or not there was a contract? Which is it? I don't know if I want to extend the procuring clause. I think that we have proven up that he procured additional sales from his client, while he didn't bring in the initial client. In this, the other settings, you had maybe a little bit different setup. In the two-on-die business, you don't. They even admit they only bring in one or two new clients, possibly a year, if that. So I think that lends itself a little bit different to not even extending the procuring clause, but looking at the facts of this industry to understand what a salesman does to earn their commissions. So I believe we've proven that, that he did procure new sales for this client to earn those commissions. As for the contract, yes, I think we've argued in the alternative that, in fact, Topp died then on a monthly basis, reiterated their oral contract with him from the very get-go. We're going to pay you commission on parts ordered for the next 18 months on that part, and here it is in writing and ratified by him by getting a check with taxes taken out. It was not a gift. It was his salary. Counsel, you also sued under the Wage Act. In order for you to recover under that Act, don't we, of necessity, have to find that there was an agreement? Because as I'm looking at it, I don't think it's an independent substantive ground for relief because it says it's a basis for recovering compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties. So if we were to find there was no contract, you would get no relief under the Wage Act. Is that correct? No, I believe that we've also shown in our case that there was an agreement when he was hired. Right, but I'm saying if you were to ultimately find it, the Wage Act would provide you with no relief, would it? Correct in reading the statute that way, yes. Any other questions, gentlemen? You can go. You can continue. As for the damages in this case, Mr. Dana had to use his last statement. He then looked at those sales and what was being carried on and figured they would be carried on because of how things had picked up on a steady basis. That's where we came out with our figure of the $70,382.51. Pursuant to the Act, he is entitled to an interest on that, which is where we came up with the $52,083.05, owing him $122,465.56. And then, of course, attorney's fees that have been labeled in the statute. So at this point, that's what Mr. Dana is asking for in this case. Thank you. You have one minute to leave. All right, thank you. Good morning. Lisa Clark, counsel. Amy Sylvester, I'm here for Tuck Dye Casting. Essentially, one of the big disputes in this case is was there a contract, was there not a contract, because that determines what exactly is the court's review of the situation. In the case law, it says contract or agreement. Is there a difference between the two? Oral agreement, I would, our position is essentially it would be the same, an agreement being a contract. And in that regard, as counsel for Mr. Dana pointed out, their position has been, we didn't know anything about this policy where you don't pay commissions after termination and so forth, where my client's position as testified in the court proceedings was, in fact, there was this policy, even one of the owner's son-in-laws did not receive commissions after his termination. With that kind of disparity in the facts, the trial court did examine the case under procuring cause, which if there's no agreement, contract between the parties, then that's where the procuring cause analysis comes in to fill in the gap. Right, the common law rule would apply, and I think we'd have to look at this, viewing the totality of the circumstances and the evidence. But what about this argument on the other side? Obviously, there's evidence, I don't think it's disputed by your company, that some parts were shipped while the plaintiff was over the account that were not part of the original production package, and some commissions were given to him. That's not in dispute, is it? It is in dispute because … There was reasons why they were given in dispute. It's not disputed he got some commissions, did he? That's correct. Okay, and parts were shipped after the original production package was settled on, right? And after he was given the account. Correct. But the issue that we looked at was that the original production package was, in fact, established by the time he had gotten the account. So there was no new parts you're saying that were shipped after he took over the account? Correct. And the analysis that can be looked at to determine that is on the commission reports, there are part numbers noted. There's an exhibit within the records, which is the original, when Standardite originally turned over the account, it turned over a spreadsheet of all the parts that they wanted top die casting to prepare. And that is defendants exhibits one and two located in the supplemental record. If you take that exhibit, which lists all the parts, which is provided and dated of June of 2005. Well, that makes sense, and that's all well and good. And why did top die casting give him any money for that? Why was he paid anything then? According to you, he wasn't entitled to anything, right? That's correct. So what are we to make of these commissions that were given him? Well, again, as their testimony was, it wasn't incentive. The testimony also established that Mr. Dana began his employment in July 2001. Here it is 2005, and by Mr. Dana's own testimony, he had only brought in one client. He could not quite remember the name of that client, Prince Manufacturing or something like that was his testimony. And he also indicated he never received commissions. So he's there from July of 2001 through 2005, had not brought in a single client that he's getting these commissions on. Top die casting's good decision, bad business decision, what have you, chose to provide Mr. Dana with a Standardite account. So should we file this under no good deed goes unpunished? Is that sort of what you're suggesting? Perhaps. Employers can give severance packages. In fact, this case, he gave severance pay four weeks. There's no legal obligation to do that. Employers can choose, unfortunately, in an at-will employment situation. Some employees get a little frustrated when low-performing employees are maintained and perhaps even promoted. There's no rule, law, that requires an employer to make good business decisions. They just can't make unlawful ones. But at this point, they started giving him a commission. That's correct. They didn't say this is an incentive. They didn't say this is a bonus. They said this is, you're going to get the commission. Isn't that correct? Well, that's where, that's, yes, you're going to get the commission. However, the dispute is Mr. Dana says, well, they never told me that this was to motivate me. They never told me this. Where my client says, yes, they did tell you that. They said, here, this is to motivate you. You're going to get a commission. But it's a commission like any other commission. They never qualified it as a commission only because we're trying to motivate you. So, in the end, can you understand how your opponent is in the position saying it was a commission like any other commission, therefore, he should, they must comply with the 18-month agreement that they have? I understand why he's arguing that position. However, the discussions, which are not memorialized in any writing, there was no memorandum given to Mr. Dana when he received this account saying that. And that's where the dispute comes into play. And that's where the trial court is in a better position to have evaluated the testimony, the demeanor of the witnesses on the stand, and the facts that were presented at court. And so, true, there is no solidified document of, or documentation that that was directly conveyed. That's where the question of fact lies. And, again, that goes then to the manifest way to the evidence. And as long as there's enough evidence that is supported in the court transcript to support the trial court's determination that, number one, we're going to look at this in a procuring cause analysis as opposed to a contract agreement analysis, and number two, there was not sufficient evidence to establish that Mr. Dana was a procuring cause, then the trial court's determination on those issues must stand. But it's undisputed that he was not told that he was only receiving his commissions just to motivate him. Or just he only received these commissions. They're not really commissions. They're more of a bonus or more of an incentive. I don't think that that's necessarily undisputed. And Mr. Dana himself, when he testified at the trial court, testified that he knew that the account was brought in by Mr. Jerry Lindmark. And then, even so, his employee counseling reports after that indicate not only is he not making sales calls but also not calling on existing customers. And there was testimony that he was confronted with that. I'm sorry. That he was confronted with his poor performance over the years. That is correct. And there was testimony that that was verbally provided to him. There's also in the supplemental record, pages 47 through 50, four different employee counseling reports. Basically, what was revealed at the trial court is the steps that progressed. Hired in 2001, not bringing in any new customers as a salesperson. And here he is receiving a quite substantial amount of a salary. Step number two, hey, here's a client. This is what can happen. Now, noted in the testimony also, it was uncontroverted that this particular client was intended to be a short-term client as well because their standardized intentions were to have these low-volume parts eventually shipped off to China, which they were toward, as Mr. Dana's termination, that, you know, there was some shipping of that. So it was, you know, here, they're saying, here, here's a client we know we're not going to have for a while. See what it's like to get commissions. Come on and see how much money you can make. That didn't work. In 2007, a whole year before his termination, he receives three different counseling reports. Now we're putting it in writing. You can see the progression that was established in the trial court record, which, again, substantiates the trial court's determination that there was a procuring cause issue in this underlying client. With regard to the, and going back to the specific issues of identifying procuring cause, simply because a commission report was provided to Mr. Dana on a monthly basis does not in and of itself end the inquiry. While it is evident, certainly, that there was a commission agreement in place, that certainly does not end the inquiry. And that's, I think, one of the basic distinctions between Mr. Dana's position and my client's position. Certainly, while somebody's receiving commissions, a company will typically provide them with information on how those commission checks are calculated, presumably to give them an opportunity to make sure that everything's accounted for and so forth. But by giving those commission reports, aren't you basically giving him the indication that, okay, you're getting commissions and this is a commission case, so this is a commission file client, not this is an incentive or this is to get you moving after you haven't moved for four years? Isn't a reasonable inference that this gentleman could have made that this was a commission? Yes, obviously they were commissions. They were never called anything but commissions. However, does that mean he was entitled to receive them? Does that mean that he's entitled to receive them after termination of employment, had there been? He wasn't entitled to receive them, but your client gave him the opportunity to receive them. So once they gave him that opportunity to receive them, was that not a message or couldn't he reasonably infer this is a commission client, one that, pursuant to the agreement, I should be getting commissions 18 months out? Was it unreasonable for him to think that? You know, it's not unreasonable for him to think that he should get commissions. I mean, they intended to give that to him. Now, you know, they could have addressed the issue in several different ways, and obviously they didn't address it in perhaps a perfect managerial decision. But that is how I would look at it. So what you seem to be saying in essence is whether we could label these things as employee incentive plans, bonuses, or commissions, at the end of the day you're saying what specific efforts can plaintiff point to that brought about the shipment of these parts. Exactly. And that's what you're saying the analysis breaks down. That's exactly correct. And that's where I submit to the court that the record from the trial court is completely void of that element on behalf of Mr. Dana in proving this. So there's no question that Gerald brought in the account. There's no question. Correct. But the issue is not who brought in the account, because there's no question he brought in the account. The question is who was receiving commissions and why were they receiving the commissions, or he was receiving the commissions. So how is it relevant who brought in the account? Well, likewise, if there's a bonus plan at a company where, based upon a person's position, they receive a certain percentage bonus, does that mean that they've earned that bonus? Does that mean, you know, that doesn't necessarily mean that they've earned it, but by virtue. But if it's a commission, by the definition, they have earned it. Whereas a bonus is maybe like a good job or here you go or Christmas, we're giving bonuses out at the end of the year, we're dividing up our surplusage and we're giving bonuses. But a commission, by its own definition, is different than a bonus, isn't it? Well, I guess that's where a commission should be an earned item. A wage should be an earned wage. A wage should be paid for someone who's there doing their job duties. That's not always the case. Exactly. And the same with a commission. And that's what I'm saying is that, yes, it should be that they earned the commission. It should be the fact that they're paying the commission. And they didn't call it anything besides a commission. But the reason for allowing that commission to be paid to Mr. Dana, whether, again, it was a good reason or not, the reason they allowed that was to give him motivation and incentive. But they did call it a commission. They certainly did. And, again, on Tostai's part, they brought in witness testimony with regard to the steps that are involved in procuring business, what a salesman is supposed to do. They brought in two different managers from the salesman department, what they're supposed to do, what are the steps, what parts are the salesmen integral in, and what parts do they simply just follow the procedure. And that's where this situation breaks down as far as it goes toward supporting that whether or not Mr. Dana was a procuring cause. He was not. Can you look at procuring cause if you have an agreement? Isn't it either or? Exactly. It is either or. And, again, it is definitely either or. I agree. In fact, the case law is very clear that if there's an agreement that spells out what happens to commissions upon termination, that agreement is what the agreement is. If there's not an agreement or if there's an agreement but simply fails to address that particular issue upon termination, that's where you look to the procuring cause. It fills the gap of not addressing that particular issue. You're saying the court found no specific agreement and ultimately the issue is, is that finding against the manifest weight of the evidence, or specifically legally, is an apposite conclusion clearly apparent? Because that's what it means when you talk about the manifest weight of the evidence, correct? Correct. Any other questions? Do you have any remarks to wind up? No, I disagree. Thank you, Your Honors, for your time today. Thank you. Thank you. Mr. Whitman. Mr. Whitman, just to clear something up for me. Your opponent, Ms. Silvestri, says if there is an agreement that addresses what happens upon termination, then procuring cause doesn't come in. But if there is an agreement but it doesn't address what happens upon termination, then you look to the procuring cause. And I think that's kind of the issue there because the case law, even though there was an agreement, the case law looked at the procuring cause and then said what did the agreement say to these commissions. So I think it kind of, in a way, goes hand in hand. It doesn't really automatically cut one off. I see. So if it's absent with one element, if you will, or one portion of the agreement, you can move to procuring cause. Correct. I think what they're looking at is they're trying to say he wasn't the initial brunt in the client. Therefore, since our policy is we don't pay after termination, therefore, did he really procure it? We win. And, again, we go back to these commission statements. And, in fact, the one in 2007, there are actually new parts being shipped that just began being shipped in 2007. So it wasn't like this was, gee, this person came to us in 2004 and all these parts came in and they've been being shipped. This was somebody the salesman had to work with. And that brings up some of the test points. What did he say he had to work with? Define what you mean. What factually, besides the commission reports, what did he do? He went down to the North Carolina office several times. He was in contact with them on their parts. He testified that if they needed extra or needed a new order of parts, he made sure it got to the front of the line in the shop to make sure the parts got out on time to make sure their inventory didn't run out. He went to their office when he was on a family vacation, went by their Connecticut office to make contact with Stanadyne, and in a way got more inroads into more parts orders from them. Jerry Lindmark, his sales manager, when he handed the commission report, testified that when I gave him the commission report, as far as I was concerned, he did everything necessary to earn the commission. Interestingly, the testimony of Jerry Lindmark's son later on was the salesman does nothing other than just quick does a sale at the very end. Yet the testimony during Plaintiff's case was that the salesman is involved with the client from the very get-go, trying to bring them in, working with them all the way through these quality meetings and those issues all the way through. So I kind of find it hard that all of a sudden the salesman doesn't do anything until the very end. I think Mr. Dana showed that he had the evaluations of his employment, didn't show up until 2007, when all of a sudden his commissions are going way up, which to me indicates they were looking for a way to get rid of him, because they knew these commissions that they thought would be a small part were now becoming a big part of his salary. And therefore, I think that is a motivation to get rid of him and ship these commissions over to someone else. Anything further? Thank you so much. Thank you, folks, for your time here this morning. The court will be in a brief recess before we hear the next case. A decision will be rendered to due court. Thank you so much.